IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LI XIA LU,<br>D/B/A HAI YAN GROCERY,<br><br>*Plaintiff,*<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>*Defendant.* | CIVIL ACTION<br><br><br><br>No. 18-cv-1969 |

Goldberg, J.                                                                                                       June 4, 2019

**Memorandum Opinion**

Plaintiff Li Xia Lu brings this case under the Food and Nutrition Act of 2008 against Defendant United States, alleging that the United States Department of Agriculture's Food and Nutrition Service ("FNS") took improper action by permanently disqualifying Plaintiff from the Supplemental Nutrition Assistance Program ("SNAP"). Defendant has moved for summary judgment on Plaintiff's request for a reversal of FNS's determination to disqualify Plaintiff from SNAP (Count One). For the foregoing reasons, I will grant Defendant's Motion.

**I.     FACTUAL AND PROCEDURAL HISTORY**

Plaintiff's response to Defendant's Motion for Summary Judgment does not comply with Federal Rule of Civil Procedure 56 because it omits (a) a short and concise statement of material facts, which he contends present genuine issues for trial, and (b) any additional facts that arguably preclude summary judgment. Accordingly, the following facts, which are taken from Defendant's Statement of Undisputed Facts, are admitted and deemed undisputed:

1

A.  **Background and the 2017 Investigation**

1. Plaintiff owns and operates Hai Yan Grocery, which is a small grocery store that sells a variety of food and non-food items, located in Philadelphia, Pennsylvania. FNS authorized Hai Yan Grocery to participate in SNAP as a retailer in 2009. (R. 1, 19, 50, 74, ECF No. 18-2, 18-5, 18-7.)

2. In February of 2017, FNS began its investigation into Hai Yan Grocery after FNS's electronic monitoring program identified transaction patterns consistent with possible electronic benefits transfer ("EBT") trafficking violations. Such violations occur when SNAP benefits are exchanged for cash or consideration other than eligible food. (R. 137, ECF No. 18-13.)

3. As part of the investigation, FNS analyzed Hai Yan Grocery's EBT transactions that were effectuated between February and July 2017. (R. 135–50, ECF No. 18-13–18-15.) Additionally, an FNS representative visited the store on May 23, 2017. (R. 27–100, ECF No. 18-3–18-9.) FNS also collected information through interviews, review of monthly redemption information, and a visual inspection of the store. (R. 101–41, 154–85, ECF No. 18-9–18-16.)

4. As part of the investigation, FNS also collected information from other stores within one mile of Hai Yan Grocery and compared its average sales with other small grocery stores. This evidence demonstrated that, when compared to similar stores, Plaintiff had significantly higher amounts of goods sold in the normal operations period (i.e., exceeded the total sales volume by 118 percent) with 55 percent more transactions, and 40 percent higher average transaction amounts. (R. 145–47, ECF No. 18-14.)  The evidence also showed suspicious transactions,

including (a) purchases that were excessively large for a small grocery store, (b) multiple rapid transactions, (c) transactions from the same households made in a suspiciously short period of time, and (d) a large amount of same-cents value purchases. (R. 101–34, 148–50, ECF No. 18-9–18-14.)

B. **The Charge Letter and Plaintiff's Responses**

5. On September 7, 2017, FNS sent a charge letter to Plaintiff, explaining that Hai Yan Grocery was charged with trafficking based on the investigation (the "Charge Letter"). The Charge Letter also included exhibits, detailing the following types of suspicious transactions that were discovered in the investigation: (a) transactions ending in same cents values (i.e., same-cents transactions), (b) rapid transactions, (c) repetitive transactions by the same household in a short period of time, and (d) transactions involving excessively large purchases. Finally, the Charge Letter invited Plaintiff to present "any information, explanation, or evidence regarding these charges" either in writing or by phone to Program Specialist, Juan Castro. (R. 151–53, ECF No. 18-15.)

6. The Charge Letter specifically informed Plaintiff that a civil money penalty could be imposed instead of permanent disqualification, but only if Plaintiff satisfied the requirements in § 278.6(c) of the SNAP regulations. Plaintiff had to make this request within ten calendar days of receiving the Charge Letter. The Charge Letter stated: "No extension of time can be granted for making a request for a CMP [civil money penalty] or for providing the required documentation." (R. 151–53, ECF No. 18-15.)

7. Plaintiff received the Charge Letter on September 8, 2017. On September 11, 2017, Plaintiff responded to the Charge Letter by calling FNS, wherein she spoke with Mr. Castro. (R. 186–87, ECF No. 18-16.)

8. On September 11, 2017, FNS agreed to give Plaintiff an extension to respond to the Charge Letter. However, FNS stated that the extension did not apply to any request for a civil money penalty in lieu of permanent disqualification from the program, emphasizing that "the time to request a civil money penalty in lieu of a permanent disqualification and to provide the documentation to support such a request has not been extended." (R. 188, ECF No. 18-16.)

9. On September 16, 2017, Plaintiff responded to the Charge Letter with a two-page handwritten letter, wherein she explained that the suspicious transactions were the result of the following: (a) customer shopping behavior that was outside of her control; (b) expensive items (i.e., baby formula and deli products), and (c) the practice of some of the store's clerks to round prices off to the nearest dollar or fifty cents. However, Plaintiff did not include any additional documentation, such as itemized receipts, invoices, or similar evidence in support of the statements in her letter. (R. 191–93, ECF No. 18-16.)

C. **FNS's Decision Letter**

10. FNS reviewed Plaintiff's responses, finding that these proffered explanations failed to adequately explain the suspect transactions because (a) Hai Yan Grocery had 118% more total sales volume, 55% more total transactions, and 40% percent higher average transaction amounts than comparable stores during the review period; (b) Plaintiff failed to directly address the rapid transactions allegations; (c)

Plaintiff's explanation that some items were more expensive was implausible because such items were statistically more likely to be purchased with the benefits from the Special Supplemental Nutrition Program for Women, Infants, and Children ("WIC"); and (d) Plaintiff's explanation for more expensive items was unsubstantiated because the store photographs did not show prices for deli meats and cheese, and no evidence was proffered by Plaintiff regarding the actual prices for deli items. (R. 194–99, ECF No. 18-16.)

11. Plaintiff did not request consideration for the alternative civil money penalty sanction. Nevertheless, Mr. Castro considered imposing a civil money penalty, but found that Plaintiff was ineligible because she did not submit evidence demonstrating that she qualified for the alternative remedy, as required by the SNAP regulations. (R. 194–99, ECF No. 18-16.)

12. On September 22, 2017, FNS sent Plaintiff its Decision Letter, stating that the investigation established that the alleged violations occurred at Hai Yan Grocery, and imposed a sanction of permanent disqualification from SNAP (the "Decision Letter"). The Decision Letter further advised Plaintiff that FNS considered Hai Yan Grocery for the civil money penalty but concluded that Plaintiff was not eligible given that no evidence was submitted as to the store's qualifications. The Decision Letter also advised Plaintiff that she could appeal within ten days of receiving the Decision Letter. (R. 200–03, ECF No. 18-16.)

**D.** **Plaintiff's Appeal to the Administrative Review Branch**

13. On October 3, 2017, Plaintiff's counsel timely appealed the Decision Letter to the Administrative Review Branch. (R. 204–07, ECF No. 18-17.)

14. On October 6, 2017, Administrative Review Officer, Jon Yorgason, responded to Plaintiff, wherein he acknowledged that the appeal request was timely and informed her that she had to submit information in support of the request by November 1, 2017. (R. 210–15, ECF No. 18-17.)

15. On October 26, 2017, Plaintiff responded to Yorgason with explanations as to why the transactions discovered by FNS did not involve trafficking. (R. 216–39, ECF No. 18-17, 18-18.) Specifically, Plaintiff denied the trafficking claims and requested a reconsideration of the decision because she has only a basic understanding of the English language and responded to the Charge Letter without consulting an attorney. Plaintiff requested that the appeal board find that: (a) Hai Yan Grocery could continue participating in SNAP pending the review; and (b) Hai Yan Grocery did not commit trafficking violations. Alternatively, she requested that the board order a civil money penalty in lieu of permanent disqualification. (R. 216–39, ECF No. 18-17, 18-18.)

16. Plaintiff's provided the following explanations in her appeal:

    – There normally are two clerks working at the store, but only one EBT terminal;

    – SNAP-eligible households will sometimes make purchases to check the balance on their card, or, having already made a purchase, will buy more if they find they have additional funds remaining on the card;

    – Many SNAP-eligible households limit the use of the card to an even-dollar figure per use, such as $150, $100, or $50;

    – The clerks cannot police the shopping behavior of their customers;

    – Many SNAP-eligible households include unemployed people who have the time and ability to shop at the store frequently for just a few items per trip;

- The schedule of school-age children in the local SNAP-eligible households are varied and can cause their parents to make multiple trips to the store in the afternoon or before dinner;

- Many SNAP purchases are for expensive items such as baby formula, and customers frequently buy multiple containers of baby formula at the same time;

- Plaintiff routinely rounds purchase prices down to even-dollar figures for repeat customers to increase goodwill and customer loyalty; and

- Some even-dollar sales take place even without this rounding down of the total sales price.

(R. 216–39, ECF No. 18-17, 18-18.)

17. Plaintiff further responded that FNS's mere statement that trafficking occurred was not proof of trafficking, and that the investigation did not produce any direct evidence of trafficking. Plaintiff further noted that "[a] computer algorithm inferring that fraud has taken place through a data mining process is not substantial evidence," and that the shopping patterns noted in the Charge Letter did not meet the statutory definition of trafficking. (R. 219, ECF No. 18-17.)

18. In the response, Plaintiff also pointed to Hai Yan Grocery's ten-year history of participation in the program without violations and insisted that Lu was not aware of and did not approve of any misconduct by employees of the store. As part of the response, Plaintiff submitted her signed affidavit, as well as signed affidavits by her husband and the two other family members who work as clerks for the store. These affidavits were submitted as evidence of a compliance and training program that was in place prior to the review period. Plaintiff also described the economic hardship that the disqualification from SNAP had caused the store and provided bank statements as evidence. (R. 220–22, 227–37, ECF No. 18-17, 18-18.)

**E.  The Administrative Review Branch's Final Agency Decision**

19. On April 10, 2018, Yorgason issued the Final Agency Decision, finding that, upon review, the record shows that the violations occurred as charged and that the penalty of permanent disqualification was proper. (R. 245–60, ECF No. 18-18, 18-19.)

20. Yorgason reviewed the relevant statutory and regulatory authority for permanent disqualifications, Plaintiff's responses, and materials from the contractor site visit. (R. 245–53, ECF No. 18-18.)

21. Regarding the same-cents transactions, Yorgason conceded that Hai Yan Grocery's explanation that it rounds prices off for some customers could be true, but found that the proffered reason was not conclusive because (a) the store clerk told FNS that it did not round prices, and (b) Plaintiff did not submit any documentary evidence (such as itemized receipts) showing that prices were rounded off. (R. 75, 253, ECF No. 18-7, 18-18.)

22. Regarding the transactions from multiple households occurring too rapidly to be considered credible as legitimate sales, Yorgason found that "it [wa]s reasonable to conclude that the transactions . . . were likely due to trafficking" because the physical layout of the store, with very limited counter space, shopping baskets but no carts, and no optical scanner to rapidly total the prices of goods made it improbable that some of the cited transactions were legitimate. Yorgason emphasized that Plaintiff failed to offer an alternative explanation for these transactions or produce any evidence demonstrating that the transactions were legitimate. (R. 253–54, ECF No. 18-18–18-19.)

23. Regarding the transactions from a single household that occurred during an unusually short timeframe, Yorgason referred to the fifty-eight transactions that totaled $3,217.67 in SNAP benefits, averaging $55.47 per transaction. While Yorgason conceded that the many alternative explanations for this category of transactions were "plausible," he concluded that Plaintiff's response was unpersuasive in light of the lack of evidence beyond the anecdotal explanations given. (R. 254, ECF No. 18-19.)

24. Regarding the final category of unusually large transactions, Yorgason calculated the average transaction rate for Hai Yan Grocery as $60.90 during the period of investigation, which was not consistent with the average transaction rate for small grocery stores in Pennsylvania (i.e., a $9.72 average transaction rate). Additionally, he noted that the record of transactions during the review period included fifteen transactions for $100 or more and another fifty-two transactions between $80 and $99.99, which seemed illegitimate in light of the store's layout. As to Plaintiff's assertion that baby formula was inflating the rate, Yorgason agreed with the analysis previously done by the Retailer Operations Division and concluded that WIC-eligible households would be unlikely to spend SNAP benefits on items that could be bought with WIC benefits instead. (R. 254–55, ECF No. 18-19.)

25. In the absence of further documentary evidence from the store (i.e., itemized receipts, inventory records, or other business records), Yorgason concluded that it was more likely than not that trafficking occurred at Hai Yan Grocery during the review period. (R. 255–56, ECF No. 18-19.)

26. Yorgason addressed Plaintiff's arguments that FNS did not produce enough evidence to find a trafficking violation. Specifically, he responded that: (a) the SNAP regulations permitted FNS to consider transaction data as well as information from store visits, analysis of customer shopping behavior, and comparisons with similar stores in reaching the conclusion that it was likely that the store trafficked in SNAP benefits; (b) the burden was on Plaintiff to rebut the FNS's case during the administrative review process, which Plaintiff failed to satisfy, despite two opportunities to submit evidence; and (c) the lack of previous violations and the existence of financial hardship were not valid considerations in determining whether trafficking violations have occurred. (R. 256–58, ECF No. 18-19.)

27. Yorgason also reviewed Hai Yan Grocery's eligibility for a civil money penalty, but found that the affidavits present in support of this alternative recovery were untimely and could not be considered per the SNAP regulations. (R. 258–59, ECF No. 18-19.)

28. On May 10, 2018, Plaintiff filed a Complaint against the United States, pursuant to 7 U.S.C. § 2023, requesting review of the administrative action with the Food and Nutrition Service ("FNS"). (Compl. ¶¶ 1–2, ECF No. 1.) On November 27, 2018, Plaintiff filed an Amended Complaint requesting a <u>de</u> <u>novo</u> review of the administrative action pursuant to 7 U.S.C. § 2023.

29. On December 7, 2018, Defendant moved for summary judgment as to the only count of the Amended Complaint. (Def.'s Mot. Summ. J., ECF No. 18.) Plaintiff responded to the Motion on February 13, 2019. (Pl.'s Resp., ECF No. 20.)

## II. LEGAL STANDARDS

### A. <u>Summary Judgment Standard</u>

Under Federal Rule of Civil Procedure 56(a), summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A dispute is "genuine" if there is a sufficient evidentiary basis on which a reasonable factfinder could return a verdict for the non-moving party, and a factual dispute is "material" if it might affect the outcome of the case under governing law. <u>Kaucher v. Cnty. of Bucks</u>, 455 F.3d 418, 423 (3d Cir. 2006) (citing <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986)). The court must view the evidence in the light most favorable to the non-moving party. <u>Galena v. Leone</u>, 638 F.3d 186, 196 (3d Cir. 2011). However, "unsupported assertions, conclusory allegations or mere suspicions" are insufficient to overcome a motion for summary judgment. <u>Schaar v. Lehigh Valley Health Servs., Inc.</u>, 732 F. Supp. 2d 490, 493 (E.D. Pa. 2010) (citing <u>Williams v. Borough of W. Chester, Pa.</u>, 891 F.2d 458, 461 (3d Cir. 1989)).

The movant "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986). Where the non-moving party bears the burden of proof on a particular issue at trial, the moving party's initial <u>Celotex</u> burden can be met by showing that the non-moving party has "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case." <u>Id.</u> at 322.

After the moving party has met its initial burden, summary judgment is appropriate if the non-moving party fails to rebut the moving party's claim by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or

declarations, stipulations . . . , admissions, interrogatory answers, or other materials" that show a genuine issue of material fact or by "showing that the materials cited do not establish the absence or presence of a genuine dispute." FED. R. CIV. P. 56(c)(1)(A).

### B. Judicial Review Under SNAP

The SNAP statute provides for judicial review or any final agency decision, whereby the court's review is "a trial de novo . . . in which the court shall determine the validity of the questioned administrative action in issue." 7 U.S.C. § 2023(a)(13), (15). A court may grant summary judgment on the administrative record where there are no genuine issues of material fact. De Jung Yun v. United States, 63 F. Supp. 2d 578, 581 (E.D. Pa. 1999) (citing Freedman v. U.S. Dep't Agriculture, 926 F.2d 252, 261 (3d Cir. 1991).

The judicial review requires the court to determine first whether a violation has occurred. Plaintiff bears the burden to prove by the preponderance of the evidence that the SNAP trafficking did not occur. Famous Int'l Market, et al. v. United States, Civil Action No. 17-4897, 2018 WL 3015249, at *9 (E.D. Pa. June 15, 2018). Where a plaintiff introduces no evidence that could raise a question of material fact about whether the SNAP violation occurred, the court must conclude that summary judgment is proper on this issue. See Freedman, 926 F.2d at 261 ("[D]e novo review is compatible with a summary judgment disposition if there are no material facts in dispute."); Atl. Deli & Grocery v. United States, No. CIV. 10-4363 JBS AMD, 2011 WL 2038758, at *4 (D.N.J. May 23, 2011).

## III. DISCUSSION

### A. Evidence Supporting FNS's Determination that Plaintiff Engaged in Trafficking

Defendant argues that summary judgment is appropriate because the record of undisputed facts demonstrates that Hai Yan Grocery engaged in trafficking. Specifically, Defendant points to

12

the thorough investigation conducted by FNS, the comparative analysis performed by FNS, and the consideration of Plaintiff's responses, which FNS concluded were implausible or unsubstantiated. (Def.'s Mot. Summ. J. 5–10, ECF No. 18.)

Plaintiff responds, denying that Hai Yan Grocery has engaged in any such trafficking. Specifically, Plaintiff urges that disputed material facts exist because (a) Plaintiff provided multiple explanations for the alleged violations; (b) Defendant improperly raised some issues in the Motion for Summary Judgment for the very first time; (c) there is no law limiting the redemption of SNAP benefits to once per day; (d) the "frequent purchases" were as far apart as twelve to twenty-three hours apart; and (e) Defendant provided no direct evidence of prohibited purchases. (Pl.'s Resp. 2–5, ECF No. 20.)

It is Plaintiff's burden to prove that a trafficking violation did not occur. Famous Int'l Market, 2018 WL 3015249, at *9. Here, Plaintiff's conclusory statements containing no reference to the record are insufficient to survive summary judgment. Indeed, Plaintiff has failed to provide any evidence of record to raise a question as to whether the trafficking occurred.

Plaintiff's lack of record evidence is particularly problematic in light of Defendant's presentation of unrebutted evidence. Specifically, the record demonstrates that FNS conducted a thorough investigation, which included an analysis of the EBT transactions between February and July of 2017, a store visitation, a review of monthly redemption information, and interviews. (See supra ¶¶ 2–4.) Additionally, FNS performed a comparative analysis, whereby the Agency compared Hai Yan Grocery with similar small grocery stores and identified four categories of suspicious transactions: (a) same-cents transactions, (b) rapid transactions, (c) repetitive transactions by the same household in a short period of time, and (d) transactions involving excessively large purchases. (See supra ¶¶ 4–5.) FNS and the appeal board both considered

Plaintiff's responses, and concluded that they were implausible or unsubstantiated, providing a thorough summary of the rationale. (See supra ¶¶ 9, 15–18, 21–26.) Under these circumstances, I conclude that Defendant is entitled to summary judgment on the issue of FNS's final determination.

B. **FNS's Disqualification of Plaintiff Was Not Arbitrary and Capricious**

Defendant argues that summary judgment is appropriate because the SNAP regulations impose a permanent disqualification for trafficking unless, within ten days of receiving the Charge Letter, Plaintiff requests the alternative civil money penalty and submits substantial evidence of an implemented effective compliance policy to prevent SNAP violations. Defendant urges that Plaintiff did not make the mandatory request or evidentiary showing within ten days. (Def.'s Mot. Summ. J. 11–14, ECF No. 18.) Plaintiff responds that there is a genuine issue of material fact as to whether she qualified for the civil money penalty because there are witnesses who could testify at trial as to the training and policy implemented to comply with SNAP. (Pl.'s Resp. 5–6, ECF No. 20.)

If the court finds that a SNAP violation has occurred, the court must then determine whether the sanction imposed was appropriate. Twin Grocery v. Deegan, No. CV 16-6151, 2017 WL 2362410, at *5 (E.D. Pa. May 31, 2017). "The standard of review for the imposition of a sanction under SNAP is whether the Secretary's action was arbitrary or capricious, i.e., whether it was 'unwarranted in law or without justification in fact.'" Atl. Deli & Grocery v. United States, No. CIV. 10-4363 JBS AMD, 2011 WL 2038758, at *5 (D.N.J. May 23, 2011) (quoting Willy's Grocery v. United States, 656 F.2d 24, 26 (2d Cir. 1981). "Deference to an administrative interpretation is particularly appropriate where, as here, the regulation concerns the Secretary's choice of sanction for a statutory violation." Grocery Town Mkt., Inc. v. United States, 848 F.2d

392, 396 (3d Cir. 1988) (citations omitted). Thus, "Plaintiff has the burden of introducing evidence into the record that would allow the Court to conclude that the agency's determination [of sanctions] . . . is unwarranted in law or fact." Atl. Deli, 2011 WL 2038758 at *5.

The SNAP regulations permit a company that has committed trafficking violations to request the sanction of a civil money penalty in lieu of permanent disqualification. 7 C.F.R. § 278.6(b)(2)(i). The request and evidence must be submitted within ten days of receiving the charge letter. 7 C.F.R. § 278.6(b)(2)(ii)–(iii). The company must submit "substantial evidence which demonstrates that the firm had established and implemented an effective compliance policy and program to prevent violations of the Program," by establishing the fulfillment of four criteria enumerated in the SNAP regulations. 7 C.F.R. § 278.6(i).

I find that Plaintiff has failed to meet her burden. Plaintiff has introduced no evidence contesting the factual finding that she did not request or submit evidence relating to a civil money penalty in lieu of permanent disqualification within ten days of receiving the Charge Letter, as is required by the SNAP regulations. (See supra ¶¶ 6–9, 12.) Similarly, Plaintiff has made no argument that, given this factual finding, the imposition of permanent disqualification is unwarranted in law, given the explicit requirement to impose such a sanction under 7 C.F.R. § 278.6(b)(2).

Plaintiff's argument that she did not understand the Charge Letter and requirements because of her limited English ability is inapposite as she has cited no supporting law. In fact, the Third Circuit Court of Appeals has found that "due process allows notice of a hearing (and its attendant procedures and consequences) to be given solely in English to a non-English speaker if the notice would put a reasonable recipient on notice that further inquiry is required." Rodriguez-Martinez v. Attorney Gen. U.S., 429 F. App'x 140, 145 (3d Cir. 2011) (quoting Nazarova v. INS, 171 F.3d

478, 483 (7th Cir. 1999)). Here, Plaintiff has provided no evidence to dispute the factual findings that (a) she was provided with the Charge Letter, (b) the Charge Letter specifically notified her of her rights, (c) Plaintiff understood the Charge Letter enough to request an extension of time for her response, and (d) she received a second letter that notified her in bold and underlined letters that the time to request a civil money penalty in lieu of permanent disqualification could not be extended. (See supra ¶¶ 5–8.) Consequently, I conclude that summary judgment is warranted on the issue of the sanction.

## IV. CONCLUSION

For the foregoing reasons, I conclude that Defendant's Motion for Summary Judgment should be granted.

An appropriate Order follows.